UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FRED NEKOUEE, individually, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No. 4:19-cv-02 |
| | : | |
| OLD NAVY, LLC, a Delaware limited liability company; | : | |
| | : | |
| THE GAP, INC., a Delaware corporation; | : | |
| | : | |
| DOLGENCORP, LLC, a Kentucky limited liability company; | : | |
| | : | |
| and | : | |
| | : | |
| SOUTH LAKEVIEW PLAZA I, L.L.C., a Missouri limited liability company; | : | |
| | : | |
| Defendants. | : | |
| _____ / | | |

## COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendants, OLD NAVY, LLC, a Delaware limited liability company; THE GAP, INC., a Delaware corporation; DOLGENCORP, LLC, a Kentucky limited liability company; and SOUTH LAKEVIEW PLAZA I, L.L.C., a Missouri limited liability company (sometimes referred to as "Defendants"), for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.     Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.     Defendant South Lakeview Plaza, L.L.C.'s property, the South Lakeview Plaza, is located at 4404-4498 Lemay Ferry Road, St. Louis, Missouri 63129, in the County of St. Louis ("South Lakeview Plaza").

3.     Defendants' Dollar General store at 4488 Lemay Ferry Road, St. Louis, Missouri 63129, is located in the South Lakeview Plaza ("Dollar General").

4.     Defendants' Old Navy store at 4498 Lemay Ferry Road, St. Louis, Missouri 63129, is located in the South Lakeview Plaza ("Old Navy").

5.     Venue is properly located in the Eastern District of Missouri because venue lies in the judicial district of the situs of the property.  The Defendants' properties and facilities are located in and do business within this judicial district.

6.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

7.     Defendants each own, lease, lease to, or operate a place of public accommodation as defined by the ADA, 42 U.S.C. 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

8.     The South Lakeview Plaza is a place of public accommodation.

9.     Dollar General is a place of public accommodation.

10.    Old Navy is a place of public accommodation.

11.    Defendants are responsible for complying with the obligations of the ADA.

12.    Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

2

13.     Mr. Nekouee traveled to the St. Louis area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, and now he travels to the St. Louis area every three to six month to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

14.     Fred Nekouee has visited the property which forms the basis of this lawsuit on March 26, 2018 and on September 23, 2018, and he has definite plans to return to the property to avail himself of the goods and services offered to the public at the property in late January or early February 2019.

15.     Plaintiff Fred Nekouee has visited the St. Louis area near the South Lakeview Plaza in June 2015; June 2016; September 2017; December 2017; March 2018; July 2018; and September 2018.

16.     Mr. Nekouee likes to shop at stores like Dollar General and Old Navy to buy necessary items for himself while traveling or gifts for his family, and since they are both chain stores he knows generally what they offer for sale.   He would like to return to the Dollar General and Old Navy in the South Lakeview Plaza.

17.     Fred Nekouee has bought goods at the Dollar General and Old Navy in the South Lakeview Plaza on March 26, 2018 and on September 23, 2018.

18.     The Dollar General and Old Navy in the South Lakeview Plaza and the South Lakeview Plaza are close to the hotels he stays at in the area.

19.     The Plaintiff plans to return to the South Lakeview Plaza on his upcoming visits to the St. Louis area since it is close to the heavy equipment dealerships he visits and to the hotels he stays at in the St. Louis area.

20.     The Plaintiff has encountered architectural barriers at the subject property.   The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restrooms at the South Lakeview Plaza.

21.     After encountering barriers to access in the men's restroom in Old Navy, the Plaintiff tried using the women's restroom in Old Navy.

22.     After encountering barriers to access the men's restroom in Dollar General, the Plaintiff tried using the women's restroom in Dollar General.

23.      The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

24.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

25.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair, and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

26.     On his visit to the South Lakeview Plaza, the Plaintiff encountered excessively steep running slopes and cross slopes in its parking lot, access aisles, ramps and walking surfaces (sidewalks).

27.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property and places of public accommodation as described but not necessarily limited to the allegations in paragraph 33 of this Complaint.   Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

28.     The Plaintiff is deterred from visiting the South Lakeview Plaza, Dollar General and Old Navy, even though he enjoys their goods and services and even though they are close to the heavy equipment dealerships he visits and to the hotels he stays at in the St. Louis area, because of the difficulties he will experience there until the property and places of public accommodation are made accessible to him in his wheelchair.

29.     Fred Nekouee desires to visit the South Lakeview Plaza not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

30.     The Defendants have discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings and facilities, as prohibited by 42 U.S.C. § 12182 et seq.

31.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

32.     Preliminary inspections of the South Lakeview Plaza have shown that violations of the ADA exist.

33.     The violations that Fred Nekouee personally encountered or observed include, but are not limited to:

**PARKING**

a. In the parking lot, there are no parking spaces for disabled patrons with van accessible signage in front of Cecil Whittaker Pizza and Sally Beauty Supply.  This lack

of signage violates Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   The Plaintiff observed this lack of signage.

b.   In the parking lot, there are no parking spaces for disabled patrons with van accessible signage in front of Ashley Homestore.   This lack of signage violates Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   The Plaintiff observed this lack of signage.

c.   In the parking lot, there are no parking spaces for disabled patrons with van accessible signage in front of Dress Barn.   This lack of signage violates Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   The Plaintiff observed this lack of signage.

d.   In the parking lot, as shown in the photograph below, there are no parking spaces for disabled patrons with van accessible signage in front of Dollar General.   This lack of signage violates Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   The Plaintiff observed this lack of signage.



e.   In the parking lot, the access aisle for accessible parking spaces in front of AJ Nail and Hope Cleaners is not visible or marked.   This access aisle is not marked, in violation of Federal Law 2010, ADAAG § 502.3.3.   The Plaintiff observed this condition, and it deters him from visiting the South Lakeview Plaza.

f.      In the parking lot, the parking space for disabled patrons in front of Old Navy, has a running slope as steep as about 1:33.3 (3%).   This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The Plaintiff encountered this condition, and it made him unstable in his wheelchair while unloading from and loading back into his vehicle, and this slope deters him from visiting the South Lakeview Plaza and this Old Navy.

g.    In the parking lot, the back section of the parking space (oriented toward the back of a car if one parks facing in) for disabled patrons in front of Cecil Whittakers Pizza has a running slope as steep as about 1:32.3 (3.1%).   This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The Plaintiff observed this condition, and it deters him from visiting the South Lakeview Plaza and Cecil Whittakers Pizza.

h.    In the parking lot, the front section of the parking space (oriented toward the front of a car if one parks facing in) for disabled patrons in front of Hope Cleaners and Club Fitness   has a running slope as steep as about 1:30.3 (3.3%).   This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting the South Lakeview Plaza.

i.    In the parking lot, as shown in the photographs below, the middle section of the parking space for disabled patrons in front of Dollar General and Old Navy has a running slope as steep as about 1:21.7 (4.6%), and this parking space, shown in the photograph below, also has a cross slope as steep as about 1:18.9 (5.3%).   These slopes are steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered these slopes, and they made him unstable in his wheelchair while unloading from and loading into his vehicle.





j.   In the parking lot, as shown in the photographs below, the parking space for disabled patrons in front of Dollar General and Old Navy has a running slope as steep as about 1:16.9 (5.9%).   This slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this slope, and it made him unstable in his wheelchair.





k.    In the parking lot, the back section of the parking space for disabled patrons nearest

the front of the Ashley Homestore, has a cross slope as steep as about 1:25.6 (3.9%).    This

cross slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal

Law 2010, ADAAG § 502.4.    The Plaintiff observed this condition, and it deters him from

visiting South Lakeview Plaza.

l.    The walking surface near Club Fitness and near the USPS mailbox, contains a change in level of about 1 inch.   This change of level in this walking surface is greater than the maximum allowed change of level of 0.5 inches, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   The Plaintiff observed this condition, and it deters him from window shopping or using this mail drop at the South Lakeview Plaza.

m.    In the parking lot, the running slope of the access aisle serving the disabled parking spaces in front of Old Navy is as steep as about 1:31.3 (3.2%).   This running slope in the access aisle is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this slope while moving in his wheelchair, and this slope made him unstable in his wheelchair.

n.    In the parking lot, as shown in the photographs below, the running slope of the access aisle serving the disabled parking spaces in front of Dollar General and Old Navy is as steep as about 1:19.2 (5.2%).   This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG  502.4.   The Plaintiff encountered this condition while moving in his wheelchair, and this slope made him unstable in his wheelchair.





o.   In the parking lot, the cross slope of the access aisle serving the disabled parking spaces in front of Ashley Homestore is as steep as about 1:25.6 (3.9%).  This slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from shopping at the Ashley Homestore and other stores in the South lakeview Plaza.

p.   As shown in the photograph below, the walking surface in front of Old Navy has a depression, and the running slope of this walking surface near the depression is as steep as about 1:14.9 (6.7%).  This slope is steeper than the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this depression and slope while moving in his wheelchair, and he required assistance to

12

overcome it in his wheelchair.





   q.   The running slope of the walking surface in front of Dollar General and Old Navy, as shown in the photographs below, is as steep as about 1:12.3 (8.1%).  This slope is

steeper than the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this slope while moving in his wheelchair, and it made him unstable in his wheelchair and very difficult for him to move toward Dollar General and Old Navy.





r.   The cross slope of the walking surface in front of the entrance to Old Navy is as steep as about 1:33.3 (3%) and steeper than 1:48 (2%).   This slope exceeds the maximum allowed cross slope of a walking surface of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this cross slope, and it made him unstable in

his wheelchair.

s.     The top landing of the accessible ramp in front of Dollar General has a slope as steep as about 1:27.8 (3.6%) and steeper than 1:48 (2%).   This slope of the top landing is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 405.7.1.   The Plaintiff encountered this slope of the top landing while moving in his wheelchair, and it made him unstable in his wheelchair, and due to its slope, the Plaintiff could not rest on this landing.

t.     The running slope of the accessibility ramp in front of Cecil Whittakers Pizza is as steep as about 1:9.3 (10.7%) and steeper than 1:12 (8%).   This slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2. The Plaintiff observed this condition, and it deters him from visiting Cecil Whittakers Pizza.

u.     The running slope of the accessibility ramp in front of Dollar General is as steep as about 1:9.7 (10.3%) and steeper than 1:12 (8%).   The running slope of this accessibility ramp is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   The Plaintiff encountered this ramp while moving in his wheelchair, and he required assistance to ascend this ramp in his wheelchair due to this slope.

v.     The running slope of the accessibility ramp in front of and between Dollar General and Old Navy is as steep as about 1:8.3 (12.1%) and steeper than 1:12 (8%).   The running slope of this accessibility ramp is steeper than the maximum allowed running slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   The Plaintiff encountered this accessibility ramp while moving in his wheelchair, and due to its steep

running slope, he became unstable in his wheelchair and required assistance to ascend and descend this ramp.

w.     The slope of the accessibility curb ramp side or flare for the ramp in front of and between Dollar General and Old Navy is as steep as about 1:5.2 (19.3%) and steeper than a slope of 1:10 (10%).   The slope of this curb ramp flare is steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3.   The Plaintiff encountered this dangerous slope in his wheelchair.

x.     The running slope of the accessibility ramp in front of Dollar General and Old Navy shown in the photograph below, is as steep as about 1:4.5 (22%) and steeper than 1:12 (8%).   This running slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   The Plaintiff observed this condition.



y.    The slope of the accessibility curb ramp side or flare in front of Old Navy is as steep as about 1:6 (16.8%) and steeper than 1:10 (10%).   The slope of this curb ramp flare is steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3.   The Plaintiff encountered this dangerous slope of the curb ramp flare while moving in his wheelchair.

z.    The slope of the accessibility curb ramp side or flare in front of Club Fitness is as steep as about 1:4.7 (21.5%) and steeper than 1:10 (10%).   The slope of this curb ramp flare is steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3.   The Plaintiff observed this condition, and it deters him from visiting Club Fitness and the South Parkview Plaza.

aa.    The slope of the accessibility curb ramp side or flare in front of AJ Nails is as steep as about 1:3.9 (25.4%) and steeper than 1:10 (10%).   The slope of this curb ramp flare is steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3.   The Plaintiff observed this condition, and it deters him from visiting other stores in the South Parkview Plaza.

bb.   Handrails are not provided around the ramp in front of Dressbarn Woman where the slope is as steep as about 7.4% over a sixteen foot length with a ramp run rise of about 10 inches and more than a ramp run rise of 6 inches.   This condition violates Federal Law 2010, ADAAG §§ 405.8 and 505.   The Plaintiff observed this slope and it deters him from moving between stores on the walking surface and window shopping at the South Parkview Plaza.

cc.    The ramp landing in front of Old Navy has a slope as steep as about 1:33.3 (3%) and steeper than a slope of 1:48 (2%).   The ramp landing in front of Old Navy has a slope steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 405.7.1.   The Plaintiff encountered this slope, and it made him unstable while moving in his wheelchair.

dd.   The slope of the surface within 60 inches of the entrance door to Old Navy is as steep as about 1:33.3 (3%) and steeper than a slope of 1:48 (2%).   The slope of the surface within this entrance door required maneuvering space of 60 inches is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAG 40.2.4.4. The Plaintiff encountered this condition and it caused him to slip sideways in his wheelchair while trying to enter Old Navy.

ee.    The slope of the surface within 60 inches of the entrance door to Dollar General

is as steep as about 1:33.3 (3%) and steeper than a slope of 1:48 (2%).   The slope of the surface within this entrance door required maneuvering space of 60 inches is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG 40.2.4.4.   The Plaintiff encountered this condition and it caused him to slip sideways in his wheelchair while trying to enter Dollar General.

**ENTRANCE DOOR TO OLD NAVY**

ff.    The force needed to open the entrance door to Old Navy is about 13 pounds and greater than 5 pounds.   The force needed to open the entrance door to Old Navy is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   The Plaintiff required assistance to enter Old Navy due to the force necessary to open this entrance door.

**MEN'S RESTROOM IN OLD NAVY**

gg.    The force needed to open the entrance door to the men's restroom in Old Navy is about 6.5 pounds and greater than 5 pounds.   The force needed to open the entrance door to the men's restroom in Old Navy is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   The Plaintiff had difficulty opening this door due to the force necessary to open it.

hh.    In the men's restroom in Old Navy, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is blocked by the side-wall and the side-wall mounted hair dryer, and such clearance is less than the minimum clearance of 18 inches.   These conditions violate Federal Law 2010, ADAAG § 404.2.4.

In his wheelchair, the Plaintiff had great difficulty opening this door due to the insufficient pull side maneuvering clearance.

    ii.    In the men's restroom in Old Navy, the accessible toilet compartment door pull is not provided on both sides of the door near the latch.   This condition violates Federal Law 2010, ADAAG § 604.8.1.2.   The Plaintiff encountered this condition.

    jj.    In the men's restroom in Old Navy, the rear wall grab bar only extends about 15 inches and 21 inches from the centerline of the water closet and does not extend a minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side from the centerline of the water closet.   The position of this rear wall grab bar violates Federal Law 2010, ADAAG § 604.5.2.   Due to the position of this rear wall grab bar, the Plaintiff had difficulty transferring from his wheelchair to the toilet.

    kk.    In the men's restroom in Old Navy, the hand dryer is located in the circulation path, is mounted on the wall between 27 inches and 80 inches above the finish floor, and protrudes over 4 inches horizontally into the circulation path.   This protrusion violates Federal Law 2010, ADAAG § 307.2.   The Plaintiff encountered this hand dryer while moving in his wheelchair and he had to take special precaution to avoid a head injury.

    ll.    In the men's restroom in Old Navy, the space between the top of the rear wall grab bar and the toilet seat cover dispenser above the grab bar is only about 3 inches and less than the minimum of 12 inches (305 mm).   This space between the rear wall grab bar and the toilet seat cover dispenser violates Federal Law 2010, ADAAG § 609.3 which provides that the space between the grab bar and projecting objects above shall be 12 inches (305 mm) minimum.   The Plaintiff encountered this toilet seat cover above the rear wall grab bar, and it made it difficult for him to use the rear wall grab bar to transfer himself

from his wheelchair to sit on the toilet.

mm.      In the men's restroom in Old Navy, the paper towel dispenser is about 58 inches above the finish floor and higher than 48 inches above the finish floor.   This paper towel dispenser outlet is more than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   The Plaintiff tried but could not reach this paper towel dispenser outlet from his wheelchair.

nn.   In the men's restroom in Old Navy, the main door lock requires tight grasping, pinching, or twisting of the wrist and cannot be opened with a closed fist or loose grip. This condition violates Federal Law 2010, ADAAG § 309.4 and is not in accord with the advisory in ADAAG § 404.2.7.   The Plaintiff could not open this door lock with a closed fist or loose grip.

oo.   In the men's restroom of Old Navy, the coat hook on the accessible toilet compartment door is about 63 inches above the finish floor and higher than 48 inches above the finish floor.   This coat hook is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   Due to its height above the floor, the Plaintiff could not use this coat hook from his wheelchair.

pp.   In the men's restroom in Old Navy, the hook mounted on the inside of the main door to the restroom is about 61 inches above the finish floor and higher than 48 inches above the finish floor.   This hook is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   Due to its height above the floor, the Plaintiff could not use this coat hook from his wheelchair.

**WOMEN'S RESTROOM IN OLD NAVY**

qq.   The force needed to open the entrance door to the women's restroom in Old Navy

is about 8.5 pounds and greater than 5 pounds.   The force needed to open the entrance door to the women's restroom in Old Navy is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   The Plaintiff had difficulty opening this door due to the force necessary to open it.

rr.   In the women's restroom in Old Navy, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is blocked by the wall-mounted hand dryer and is less than 18 inches.   This door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than the minimum required clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4. Due to the location of this hand dryer, the Plaintiff had difficulty exiting the women's restroom in his wheelchair.

ss.   In the women's restroom in Old Navy, the accessible toilet compartment door pull is not provided on both sides of the door near the latch.   This condition violates Federal Law 2010, ADAAG § 604.8.1.2.   Due to the lack of a door pull, the Plaintiff could not fully close the door to this compartment.

tt.   In the women's restroom in Old Navy, the rear wall grab bar does not extend a minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side from the centerline of the water closet.   The position of this rear wall grab bar violates Federal Law 2010, ADAAG § 604.5.2.   Due to the position of this rear wall grab bar, the Plaintiff had difficulty transferring from his wheelchair to the toilet.

uu.   In the women's restroom in Old Navy, the space between the top of the rear wall grab bar and the toilet seat cover dispenser above the grab bar is only about 3 inches and

less than the minimum of 12 inches (305 mm).   This space between the rear wall grab bar and the toilet seat cover dispenser violates Federal Law 2010, ADAAG § 609.3 which provides that the space between the grab bar and projecting objects above shall be 12 inches (305 mm) minimum.   The Plaintiff encountered this toilet seat cover above the rear wall grab bar, and it made it difficult for him to use the rear wall grab bar to transfer himself from his wheelchair to sit on the toilet.

vv.   In the women's restroom in Old Navy, the paper towel dispenser outlet is about 58 inches above the finish floor and higher than 48 inches above the finish floor.   This paper towel dispenser outlet is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   From his wheelchair, the Plaintiff could not reach this paper towel dispenser.

ww.      In the women's restroom in Old Navy, the main door lock requires tight grasping, pinching, or twisting of the wrist and cannot be opened with a closed fist or loose grip.   This condition violates Federal Law 2010, ADAAG § 309.4 and is not in accord with the advisory in ADAAG § 404.2.7.   The Plaintiff could not open this door lock with a closed fist or loose grip.

xx.   In the women's restroom of Old Navy, the coat hook on the accessible toilet compartment door is about 62 inches above the finish floor and higher than 48 inches above the finish floor.   This coat hook is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   Due to its height above the floor, the Plaintiff could not use this coat hook from his wheelchair.

**MEN'S RESTROOM IN DOLLAR GENERAL**

yy.   As shown in the photographs below, the hallway towards the men's restroom in

Dollar General is restricted by boxes and a hand truck and is only about 23 inches wide and less than 32 inches wide.   This condition violates Federal Law 2010, ADAAG § 403.5.1.   The Plaintiff encountered these barriers to access.





**WOMEN'S RESTROOM IN DOLLAR GENERAL**

zz.     The force needed to open the entrance door to the women's restroom in Dollar General is about 10 pounds and greater than 5 pounds.   The force needed to open the entrance door to the women's restroom in Dollar General is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   The Plaintiff required assistance to enter this women's restroom due to the force necessary to open its entrance door.

aaa.     In the women's restroom in Dollar General, the entrance door pull side maneuvering clearance in a front approach perpendicular to the doorway is blocked by a shelf and is only about 34 inches and less than a clearance of 60 inches.   This restroom's door pull side maneuvering clearance in a front approach perpendicular to the doorway is less than the minimum required clearance of 60 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.    In his wheelchair, the Plaintiff encountered this lack of clearance, and it made it difficult for him to exit the restroom.

bbb.     In the women's restroom in Dollar General, the accessible toilet compartment door pull is not provided on both sides of the door near the latch.   This condition violates Federal Law 2010, ADAAG § 604.8.1.2.   Due to the lack of a door pull, the Plaintiff could not fully close the door to this compartment.

ccc.     In the women's restroom in Dollar General, the lavatory pipes under the sink are not insulated.   The water supply and drain pipes under this sink are not insulated, in violation of Federal Law 2010, ADAAG § 606.5.   The Plaintiff used this sink, and due to the lack of insulation, he risked skin burns and injury to his legs.

ddd.     In the women's restroom in Dollar General, the bottom edge of the mirror's

reflecting surface is higher than 40 inches above the finish floor.   This condition violates Federal Law 2010, ADAAG § 603.3.   Due to the height of the mirror's reflecting surface above the floor, the Plaintiff could not see his full face in this mirror from his wheelchair.

eee.      In the women's restroom in Dollar General, the coat hook on the accessible toilet compartment door is about 55 inches above the finish floor and higher than 48 inches above the finish floor.   This coat hook is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   Due to its height above the floor, the Plaintiff could not use this coat hook from his wheelchair.

34.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

35.    The discriminatory violations described in paragraph 33 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' places of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

36.   The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' buildings and their facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and

damage without the immediate relief provided by the ADA as requested herein.

37.    Defendants have discriminated against the individual by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.   Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

38.    Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

39.    Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

40.    Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals

who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

41.    Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

42.    Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendants to alter the South Lakeview Plaza, Old Navy, Dollar General, and parking lot spaces and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests from the Court:

a.    A Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.    Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or

procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

      c.     An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

      d.     Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*